UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUDITH S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C22-5749-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by: (1) discounting her testimony, (2) assessing certain medical opinions, and (3) finding that she could perform her past work as a customer complaint clerk. (Dkt. # 11 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.   BACKGROUND

Plaintiff was born in 1963, has one year of college education, and has worked as an accounting assistant, caregiver, and credit/collection analyst. AR at 317-18. Plaintiff was last gainfully employed in October 2016. *Id.* at 317.

ORDER - 1

1    In July 2018, Plaintiff applied for benefits, with an amended alleged onset date of
September 1, 2015, and a date last insured ("DLI") of March 31, 2016. AR at 1300, 1303, 1331.
Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a
hearing. *Id.* at 210-12, 217-25. After the ALJ conducted a hearing in October 2019 (*id*. at
146-92), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 71-88.

The Appeals Council denied Plaintiff's request for review (AR at 1-7), and Plaintiff
sought judicial review. The U.S. District Court for the Western District of Washington reversed
the ALJ's decision and remanded for further administrative proceedings. *Id.* at 1391-1403. On
remand, the ALJ held a hearing in June 2022 (*id*. at 1323-60), and subsequently issued a decision
again finding Plaintiff not disabled because she could perform her past work as a customer
complaint clerk. *Id*. at 1300-13. The Appeals Council did not assume jurisdiction of the case, and
Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social
security benefits when the ALJ's findings are based on legal error or not supported by substantial
evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a
general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the
ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)
(cited sources omitted). The Court looks to "the record as a whole to determine whether the error
alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such
relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Did Not Harmfully Err in Assessing Plaintiff's Testimony

The ALJ summarized Plaintiff's allegations and explained that he discounted them because: (1) there is little medical evidence dating to the adjudicated period and Plaintiff's treatment was routine and conservative during that time; (2) the record indicates that Plaintiff did not complain of disabling functional limitations until after a fall in June 2016, months after the DLI; and (3) her daily activities during the adjudicated period were inconsistent with the limitations she alleged. AR at 1305-08. Absent evidence of malingering, an ALJ must provide clear and convincing reasons to discount a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff argues that the ALJ erred in finding that evidence of Plaintiff's treatment and complaints during the adjudicated period suggested that her condition was not disabling until after her post-DLI fall, in contradiction with her testimony that her symptoms were disabling throughout the adjudicated period and significantly increased in that time. (Dkt. # 11 at 12.) Plaintiff does not explain why this finding is erroneous, however, but suggests generally that the ALJ should have credited medical opinions rather than looking to the treatment record himself. (*Id.*) This suggestion is contrary to authority indicating that ALJs are tasked with reviewing the

ORDER - 3

medical records when reviewing a claimant's allegations. *See, e.g.*, *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work."); Social Security Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017) ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Here, the ALJ reviewed the medical record and found that Plaintiff's course of treatment and degree of complaints during the adjudicated period contradicted her testimony. *See* AR at 1306-07. Specifically, the ALJ noted that Plaintiff sought minimal chiropractic care for her back pain during the adjudicated period (*id*. at 418-31), and that she reported feeling "okay" until her post-DLI fall in June 2016, at which point she developed acute pain and sought additional treatment for the purposes of achieving a "surgical fix." *See id*. at 515-16. The ALJ also emphasized that Plaintiff reported in her chiropractic intake form in June 2014 that her pain did not interfere with her ability to work or sleep, but did impact her daily routine. *See id*. at 1307 (citing *id*. at 420).

Although Plaintiff contends that the meaning of her report that she felt "okay" until her fall is "unclear" (dkt. # 21 at 5), Plaintiff does not show that the ALJ was unreasonable in finding that it meant that her symptoms were manageable. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Because the ALJ reasonably

found that the evidence of limited conservative treatment and complaints during the adjudicated period undermines Plaintiff's allegation of disability before her DLI, the ALJ did not err in discounting Plaintiff's testimony on that basis.

Even if, as Plaintiff argues (dkt. # 11 at 12), the ALJ failed to identify activities that were actually inconsistent with her allegations or demonstrated the existence of transferable work skills, any error is harmless because the ALJ properly discounted Plaintiff's testimony based on inconsistency with the medical record. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Accordingly, the Court finds that Plaintiff has failed to meet her burden to show harmful legal error in the ALJ's assessment of Plaintiff's testimony.

**B.     The ALJ Did Not Err in Assessing Medical Opinion Evidence**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 404.1520c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). With these standards in mind, the Court turns to consider Plaintiff's challenges to the ALJ's assessment of certain medical opinions.

Thomas Gritzka, M.D., examined Plaintiff in December 2018 and wrote a narrative report describing Plaintiff's treatment history and opined that based on his review of the records and his examination of Plaintiff, Plaintiff's functional limitations were disabling long before her DLI. AR at 1077-85. Brian Iuliano, M.D., and Michael Strohbach, M.D., who treated Plaintiff after the DLI, concurred in Dr. Gritzka's conclusion that Plaintiff's functional limitations were disabling at least as early as September 2015. *See id*. at 1100, 5874.

ORDER - 5

The ALJ found that Dr. Gritzka's opinion was supported by his review of Plaintiff's records as well as his examination of Plaintiff nearly three years after the DLI, but the ALJ found that the opinion was inconsistent with the evidence, summarized *supra*, indicating that Plaintiff sought routine care during the adjudicated period, reported that her symptoms did not prevent her from working, and that she felt "okay" until her June 2016 fall. AR at 1306-10. The ALJ characterized Dr. Gritzka's opinion as "necessarily speculative" as to how limiting Plaintiff's symptoms were before the DLI, given that Dr. Gritzka did not examine her until years later and the records do not suggest that Plaintiff's limitations were disabling prior to the DLI. *Id*. at 1310. Accordingly, the ALJ found Dr. Gritzka's opinion unpersuasive, and the ALJ indicated that he found the opinions of Drs. Iuliano and Strohbach unpersuasive for the same reasons. *Id*. at 1309-10.

Plaintiff raises several challenges to the ALJ's assessment of the opinions of Drs. Gritzka, Iuliano, and Strohbach.[1] First, Plaintiff argues that the ALJ improperly based his assessment of these medical opinions on their post-DLI timing. (Dkt. # 11 at 10.) Plaintiff argues that the fact that Dr. Gritzka could examine her and compare his findings to "what he saw in the imaging near the period at issue" strengthened his opinion. (*Id*.) The ALJ agreed with this reasoning: the ALJ found that Dr. Gritzka's opinion was supported by his own "direct examination." AR at 1310. The ALJ found that Dr. Gritzka's opinion was indeed supported, and did not find the opinion unpersuasive on account of a lack of supportability. *Id*. Thus, this line of

---

[1] Plaintiff contends that the ALJ erred in finding all three of these opinions unpersuasive, but targets most of her argument on Dr. Gritzka's opinion, without differentiating the other two opinions. Because the opinions of the other two physicians affirmed Dr. Gritzka's opinion, and the ALJ himself focused primarily on Dr. Gritzka's opinion and relied on his reasoning with respect to that opinion in assessing the other two opinions, this Order focuses on Dr. Gritzka's opinion as well.

ORDER - 6

argument fails to show error in the ALJ's stated reasons for finding Dr. Gritzka's opinion unpersuasive.

Next, Plaintiff argues that although the ALJ referenced "effective surgical treatment," Plaintiff's 2006 surgery was not "effective in total, as Dr. Gritzka explained[.]" (Dkt. # 11 at 10.) But the ALJ did not cite Plaintiff's effective surgical treatment as inconsistent with Dr. Gritzka's opinion. Instead, the ALJ noted that Plaintiff had multiple surgeries, before and after the adjudicated period, and stated that although one surgery appeared to be successful at first, her condition worsened thereafter and Plaintiff required additional surgery. *See* AR at 1306-10. The ALJ did not rely on any of the surgeries as a reason to discount either Plaintiff's allegations or the medical opinions. *See id*. Plaintiff also stated that she could not afford more aggressive treatment during the adjudicated period (*id*.) and the ALJ acknowledged her testimony to that effect, but found that the treatment notes pertaining to the adjudicated period fail to establish that Plaintiff's condition necessitated more aggressive treatment during the adjudicated period, regardless of whether she could have afforded it. *See id*. at 1307. Plaintiff has failed to show that the ALJ erred in interpreting the treatment record as suggesting that Plaintiff's condition was not disabling until her post-DLI fall, and Plaintiff's arguments (dkt. # 11 at 10-11) regarding her surgeries are unavailing.

Lastly, Plaintiff argues that Dr. Gritzka did not overly rely on her subjective reporting, emphasizing that although Dr. Gritzka found Plaintiff's reports to be credible and corroborated by objective evidence, he relied "mainly on objective imaging." (Dkt. # 11 at 11.) Plaintiff notes that Dr. Gritzka had access to post-DLI MRI evidence that revealed pathology that would have taken years to develop, and thus that pathology existed to at least some degree during the adjudicated period. (*Id*.) The ALJ did not deny that Plaintiff had severe impairments during the

adjudicated period, however. The ALJ looked to the medical record and found that Plaintiff did have degenerative disc disease and degenerative joint disease during the adjudicated period, but that those conditions did not cause disabling limitations during the adjudicated period in light of the limited treatment and complaints until after the post-DLI fall in June 2016. *See* AR at 1310. As the ALJ noted (*id.*), even if Dr. Gritzka is correct that Plaintiff's impairments existed at a certain level of severity during the adjudicated period, that fact does not establish that any particular disabling limitations followed. *See, e.g.*, *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (explaining the difference between a medical impairment and a finding of disability: "'The same level of injury is in no way predictive of an affected individual's ability to participate in major life functions (including work)[.]'" (cleaned up)). This portion of Plaintiff's brief (dkt. # 11 at 11) fails to establish error in the ALJ's assessment of Dr. Gritzka's opinion.

Because Plaintiff has not shown that the ALJ erred in finding that the conclusions of Drs. Gritzka, Iuliano, and Strohbach were inconsistent with the record, Plaintiff has not shown that the ALJ erred in finding these opinions unpersuasive on that basis.

### C. The ALJ Did Not Err at Step Four

The ALJ found that Plaintiff was capable of performing sedentary work as defined in 20 C.F.R. § 404.1567(a), with additional non-exertional limitations. AR at 1305. At the administrative hearing, the vocational expert ("VE") testified that a person limited to sedentary work could perform Plaintiff's past work as a customer complaint clerk even if she also required a walker for ambulation because the job involves sitting "essentially" all day and requires little walking. *Id.* at 1357. The VE further clarified that because customer complaint clerks usually wear a headpiece, they may stand at their workstation while using the telephone and remain on task. *See id.* at 1354-58.

Plaintiff argues that because the ALJ limited her to sitting for six out of eight hours in a workday, the ALJ erred in finding that she could perform a job that requires sitting "essentially" all day. (Dkt. # 11 at 4-5 (citing AR at 1305).) But the ALJ did not, in fact, limit Plaintiff to sitting for no more than six hours per day. Instead, the ALJ found Plaintiff capable of performing sedentary work "as defined in 20 C.F.R. § 404.1567(a)[,]" and that regulation defines a sedentary job as "one which involves sitting," although it can include occasional standing/walking to carry out job duties. See 20 C.F.R. § 404.1567(a).[2] The sitting and standing/walking demands of the customer complaint clerk job, as actually or generally performed (AR at 330, 1354-55), are consistent with this regulatory definition of sedentary work. Plaintiff's arguments notwithstanding, sedentary work is not defined in the regulations to involve a maximum amount of sitting, and thus the Court finds no reason to find that the ALJ's reference to Plaintiff's ability to perform sedentary work implies that she could sit no more than six hours per day. Because Plaintiff's argument depends on a misstatement of the ALJ's RFC assessment, Plaintiff's argument fails to establish harmful legal error in the ALJ's step-four finding.

---

[2] For the first time on reply (dkt. # 21 at 2), Plaintiff interprets the ALJ's RFC assessment in light of a provision of the Commissioner's Program Operations Manual System ("POMS"), which contains this definition of sedentary work:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

POMS DI 25015.020, *available at* https://secure.ssa.gov/poms.nsf/lnx/0425015020 (last visited March 30, 2023). The ALJ did not refer to this provision when composing the RFC assessment, however, nor did the ALJ find Plaintiff capable of performing the "full range" of sedentary work. *See* AR at 1305. For these reasons, the Court finds that POMS DI 25015.020 does not aid in interpreting the ALJ's RFC assessment.

ORDER - 9

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**, and this case is **DISMISSED** with prejudice.

Dated this 31st day of March, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge